IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TRANSFIRST GROUP, INC. f/k/a** | § | |
| **TransFirst Holdings, Inc., et al.,** | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **Civil Action No. 3:16-CV-1918-L** |
| **v.** | § | |
| | § | |
| **DOMINIC J. MAGLIARDITI;** | § | |
| **FRANCINE MAGLIARDITI, in her** | § | |
| **individual capacity, and as trustee of** | § | |
| **FRM TRUST, DJM IRREVOCABLE** | § | |
| **TRUST and the FANE TRUST; ATM** | § | |
| **ENTERPRISES, LLC; DII CAPITAL,** | § | |
| **INC.; DFM HOLDINGS, LTD.; DFM** | § | |
| **HOLDINGS, LP; DII PROPERTIES** | § | |
| **LLC; and SPARTAN PAYMENT** | § | |
| **SOLUTIONS, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On February 9, 2017, the court issued a memorandum opinion and order finding that Plaintiffs had established a prima facie case that the court has personal jurisdiction over Defendants Dominic Magliarditi ("Mr. Magliarditi"); Francine Magliarditi, as sued in her capacity as trustee of FRM Trust, DJM Irrevocable Trust, and Fane Trust (the "Trust Defendants"); DII Capital, Inc., ATM Enterprises, LLC, and Spartan Payment Solutions, LLC (the "Shell Company Defendants"). *See* Mem. Op. & Order 14 (Doc. 32). The court also stated: "Whether [it] has personal jurisdiction over Mrs. Magliarditi, sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP, will be addressed in a separate order, which will also address the remainder of Defendants' arguments presented in their respective motions." *Id.* at 14-15. After

**Memorandum Opinion and Order - Page 1**

careful consideration of the motions, pleadings, record, and applicable law, the court finds that it lacks personal jurisdiction over Mrs. Magliarditi, as sued in her individual capacity ("Mrs. Magliarditi"), as well as DFM Holdings, Ltd. and DFM Holdings, LP (the "Partnership Defendants"). Rather than dismiss Mrs. Magliarditi and the Partnership Defendants for lack of personal jurisdiction, and for the reasons set forth below, the court determines that this case should be transferred to the District of Nevada for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. §§ 1631 and 1404(a).

## I.      Factual and Procedural Background

### A.      The 2006 Action & Entry of Judgment Against Dominic Magliarditi

Plaintiffs are TransFirst Group, Inc. f/k/a TransFirst Holdings, Inc. ("Transfirst"), a Delaware corporation with its principal place of business in Hauppauge, New York; and two Delaware limited liability companies, TransFirst Third Party Sales, LLC and Payment Resources International, LLC, whose sole member is TransFirst. Plaintiffs have a judgment in the amount of $4,486,725 against Defendant Mr. Magliarditi. The judgment was obtained in a separate lawsuit brought by Plaintiffs against Mr. Magliarditi and others in 2006. *See TransFirst Holdings, Inc., et al. v. Dominic J. Magliarditi, et al.*, Case No. 3:06-CV-2303-C, in the United States District Court for the Northern District of Texas (the "2006 Action").[1] Following a three-week bench trial in 2009, the Honorable Jorge A. Solis adjudged Mr. Magliarditi and other entities liable for mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and found that Mr. Magliarditi had lied under oath in sworn interrogatory responses and affidavits. On

---

[1] The court takes judicial notice of the docket sheet and filings in the 2006 Action. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998); *see also* Fed. R. Evid. 201. Further, on May 2, 2016, following the retirement of the Honorable Chief Judge Jorge A. Solis, the 2006 Action was transferred to the docket of the Honorable Sam R. Cummings, Senior United States District Judge.

**Memorandum Opinion and Order - Page 2**

August 30, 2011, Judge Solis entered a final judgment and, after several amendments, on April 22, 2013, entered the Third Amended Final Judgment (the "Judgment") against Mr. Magliarditi and the other entities and in favor of Plaintiffs in the amount of $4,486,725.

In June 2014, the United States Court of Appeals for the Fifth Circuit affirmed the Judgment. *TransFirst Holdings Inc. v. Magliarditi*, 574 F. App'x 345 (5th Cir. 2014). Between entry of the Judgment, and continuing until the present, Plaintiffs have sought to uncover Mr. Magliarditi's assets and to enforce the Judgment in this District, as well as in California and Nevada. Among other things, a postjudgment discovery dispute between Plaintiffs and Mr. Magliarditi was referred to Magistrate Judge Paul D. Stickney who, on August 6, 2015, overruled Mr. Magliarditi's objections to postjudgment discovery requests, sanctioned him, and ordered him to travel to Texas at his own expense to testify in a postjudgment deposition in the magistrate judge's chambers in Dallas, which took place on September 16, 2015. That litigation is ongoing, as evidenced by recent docket entries in 2016 and 2017.

### B.     The Current Lawsuit

On June 30, 2016, Plaintiffs filed this lawsuit against judgment debtor Mr. Magliarditi, as well as new Defendants who were not parties to the 2006 Action, namely, Mrs. Magliarditi, the Trust Defendants, the Shell Company Defendants, and the Partnership Defendants, alleging that Mr. Magliarditi fraudulently transferred assets to Mrs. Magliarditi and the other Defendants in an effort to frustrate Plaintiffs' ongoing efforts to collect on the Judgment.

In Plaintiffs' First Amended Complaint ("Complaint" or "Compl.") (Doc. 11), Plaintiffs allege that, to date, Mr. Magliarditi has only paid $62 toward the Judgment. Plaintiffs allege that Mr. Magliarditi and Mrs. Magliarditi "are working together to defraud Plaintiffs and prevent them from collecting on the Judgment by hiding and transferring assets through the use of a labyrinth

**Memorandum Opinion and Order - Page 3**

of layered shell companies and trusts [which are] shams, existing for no reason other than to hide

assets, defraud Transfirst, and otherwise act as the alter ego of [Mr. Magliarditi]." *Id.* at 2. Seeking

to unwind the alleged fraudulent transfers and to hold Mrs. Magliarditi, the Trust Defendants, the

Shell Company Defendants, and the Partnership Defendants liable for the Judgment entered in the

2006 Action, Plaintiffs assert the following causes of action: (1) fraudulent transfers under the

Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.006(b) and

24.005(a); (2) unjust enrichment; and (3) alter ego, alleging that Mrs. Magliarditi, as sued in her

individual capacity, the Trust Defendants, the Shell Company Defendants, and the Partnership

Defendants "are alter-egos of [Mr. Magliarditi] and, therefore, they should be held jointly and

severally liable with [him] on the Judgment." Compl. at 2-3. Plaintiffs seek compensatory

damages, restitution, punitive and exemplary damages, attorney's fees, injunctive relief,

appointment of a receiver, and any other relief to which they are entitled. *Id.* at 30-31.

### C.    The Pending Motions and the Court's February 9, 2017 Ruling (Doc. 32)

Defendants have moved to dismiss the Complaint on a variety of grounds, including for

lack of personal jurisdiction, improper venue, and for failure to state a claim; or, alternatively, they

request that the court strike portions of the Complaint and direct Plaintiffs to file more

particularized averments with regard to the fraudulent conveyance claim pursuant to Federal Rule

of Civil Procedure 12(e). On February 9, 2017, the court issued a memorandum opinion and order

finding that, contrary to Defendants' arguments in their pending motions to dismiss, Plaintiffs had

established a prima facie case that the court has personal jurisdiction over Defendants Mr.

Magliarditi, the Trust Defendants, and the Shell Company Defendants. *See* Mem. Op. & Order 14

(Doc. 32). The court also stated: "Whether [it] has personal jurisdiction over Mrs. Magliarditi, as

sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP, will be addressed

in a separate order, which will also address the remainder of Defendants' arguments presented in their respective motions.  *Id.* at 14-15.

## II.      Legal Standards for Rule 12(b)(2) - Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant.  *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required.  *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart*, 772 F.2d at 1192.  Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution.  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993).  Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must

determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest

in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## III.   Analysis

Defendants move to dismiss Mrs. Magliarditi and the Partnership Defendants for lack of personal jurisdiction. The court now addresses whether Plaintiffs have met their burden of presenting a prima facie case for the exercise of personal jurisdiction over these three Defendants.

### A.   Personal Jurisdiction

Personal jurisdiction over Mrs. Magliarditi and the Partnership Defendants is premised on (i) the theory that they have engaged in intentional conduct designed to cause harm in Texas, namely, a scheme to defraud Plaintiffs out of money owed them under the Judgment; and (ii) various piercing-the-corporate-veil theories, including alter ego and sham to perpetrate fraud on Plaintiffs. The court first addresses Plaintiffs' argument that the court has specific personal jurisdiction over Mrs. Magliarditi, as sued in her individual capacity, and the Partnership Defendants based on their alleged participation in a tortious scheme to defraud Plaintiffs and defeat their ability to collect amounts owed under the Judgment.

*1.   Minimum Contacts Analysis*

Plaintiffs argue that even though Mrs. Magliarditi and the Partnership Defendants may be participating in this alleged scheme from Nevada, this does not place them beyond this court's reach, as the harm they are causing is being felt in Texas.  In advancing this argument, Plaintiffs rely on *Calder v. Jones*, 465 U.S. 783 (1984), which, as interpreted by the Fifth Circuit, held that "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 789-90).  Plaintiffs also reference this court's application of *Calder* in *Sourcing Management, Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 910-11 (N.D. Tex. 2015) (Lindsay, J.); and applied by the Fifth Circuit in *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 344-45 (5th Cir. 2014), and *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009).  *See* Pls.' Resp. Br. 4-6 (Doc. 27).  Plaintiffs contend that these cases provide the legal authority to allow this court to exercise personal jurisdiction over these three Defendants.  The court disagrees.

Plaintiffs' reliance on *Sourcing Management*, *Dontos*, and *Mullins* is misplaced, and their interpretation of these cases is unduly expansive and goes far beyond what those courts held.  In *Sourcing Management*, the court concluded that the plaintiff "made a prima facie showing that [defendant] established minimum contacts with Texas sufficient for [it] to exercise specific jurisdiction over [defendant]" when the defendant "intentionally impaired [plaintiffs'] ability to collect on its Texas judgment . . . by colluding to transfer [another defendants'] assets via a private foreclosure sale."  118 F. Supp. 3d at 911.  In *Dontos*, the Fifth Circuit reversed the district court and held that personal jurisdiction over out-of-state defendants was present where plaintiff alleged

that defendants participated in a scheme to fraudulently transfer assets to prevent a Texas creditor-plaintiff from collecting a pre-existing Texas judgment in violation of TUFTA.  582 F. App'x at 348.  In *Mullins*, the Fifth Circuit upheld the district court's exercise of personal jurisdiction over a nonresident defendant that had no other contacts with Texas except for its involvement in a fraudulent transfer scheme that affected "a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas." 564 F.3d at 402.

There is a notable distinction between this case, on the one hand, and *Sourcing Management*, *Dontos,* and *Mullins*, on the other hand.  Each of those cases involved plaintiffs that were Texas residents, and this, among other things, created a connection to Texas aside from the judgment issued in a Texas court.  *Sourcing Management* involved a Texas creditor attempting to collect on its Texas Judgment.  118 F. Supp. 3d at 910.  *Dontos* involved transfers that impaired the rights of a Texas resident.  In explaining its reason for exercising personal jurisdiction, the court in *Dontos* stated: "[W]hen a nonresident defendant receives Texas property or a Texas contract, for the purpose of defrauding a Texas resident, the nonresident defendant is subject to suit in Texas courts."  582 F. App'x at 347 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009)).  In *Mullins*, the "debtor-creditor relationship between [the parties] [was] centered in Texas." 564 F. 3d at 402.  The plaintiff in *Mullins* was a Texas creditor, the conduct that thwarted payment occurred in Texas, and the parties' business relationship contract was governed by Texas law; therefore, the case involved multiple contacts with Texas separate from the judgment.

In this case, there are no allegations that the fraudulent transfers occurred in Texas or involved any Texas entities.  According to the Complaint, the individuals and entities that allegedly participated in the transfers are domiciled in Nevada, and Plaintiffs that are unable to recover on

the Judgment are domiciled in Delaware and New York.  While Transfirst had a principal place of business in Dallas, Texas, when it initiated the 2006 Action alleging RICO violations, Transfirst has since moved its principal place of business to Hauppauge, New York.  The only connection to Texas that Plaintiffs have is the Judgment issued in the 2006 Action.  Plaintiffs have failed to cite any case to support their argument that the Judgment itself, without more, is sufficient to allow the court to exercise personal jurisdiction over out-of-state defendants who were not parties to the underlying action in which the Judgment was issued.

In sum, Plaintiffs have failed to establish a prima facie case that Mrs. Magliarditi and the Partnership Defendants have sufficient minimum contacts with Texas such that the exercise of personal jurisdiction over them would be proper.  *See Burger King*, 471 U.S. at 475.  Accordingly, the court now turns to Plaintiffs' alternative theory of personal jurisdiction.

### 2.  *Alter-Ego Analysis*

As an alternative to the traditional minimum contacts analysis, Plaintiffs argue that personal jurisdiction may be exercised over Mrs. Magliarditi and the Partnership Defendants because they are alter egos of Mr. Magliarditi.  In moving to dismiss, Defendants contend that, with regard to Mrs. Magliarditi, "Plaintiffs cite no authority that one <u>person</u> can be the alter ego of another <u>person</u> for purposes of asserting personal jurisdiction."  Defs.' Br. 6 (Doc. 19) (original emphasis).  As to the Partnership Defendants, Defendants contend that "the alter ego theory does not apply to partnerships and thus cannot be the basis for personal jurisdiction over a limited partnership[.]"  *Id.* at 7 (Doc. 19).  The court agrees.

The Fifth Circuit has recognized that personal jurisdiction may be established over an individual or corporation through a piercing-the-corporate-veil or alter-ego theory.  *See Patin v.*

*Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).  As the Fifth Circuit explained in *Patin*:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not otherwise be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.  The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of the one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis.

*Patin*, 294 F.3d at 653.  "Further, the piercing-the-corporate-veil test for attribution of contacts, i.e., personal jurisdiction, is less stringent than for liability."  *Ingenious Invs., Inc. v. Bombart*, 2006 WL 1582080, at *3 (N.D. Tex. Jan. 20, 2006) (McBryde, J.) (internal quotation marks and citation omitted).

The alter-ego doctrine permits a court to disregard the corporate fiction under certain circumstances to hold an individual liable for the debts of a corporation or to hold a corporation liable for the debts of an individual.  *See Leon, Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 707 (Tex. App.—El Paso 1993, no writ).  Traditional veil-piercing uses the alter-ego doctrine to break through corporate formalities and include the assets of a shareholder or other corporate insider as assets of a corporation.  *See In re Moore*, 379 B.R. 284, 291 (Bankr. N.D. Tex. 2007).  Reverse veil-piercing, at issue in this case, "is a common law doctrine recognized in many states, including Nevada and Texas, that renders the assets of a corporation liable for the debts of a corporate insider based on a showing that the corporate entity is actually the alter ego of the individual."  *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856, at *9 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (and cases cited therein).  Nevada courts have held that "[i]t is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the

controlled entity to hide assets or secretly to conduct business to avoid a pre-existing liability of the controlling party." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 903 (Nev. 2000).  Under Nevada law, courts consider the following factors as indicative of the existence of an alter-ego relationship: "commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *LFC Mktg. Grp.*, 116 Nev. at 904 (citation omitted).  Nevada courts, however, have emphasized that "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Id.* (citation omitted).

While courts have extended veil-piercing doctrines to corporations and limited liability companies, as Defendants correctly note (*see* Defs.' Br. 7 (Doc. 19)), the alter-ego theory does not apply to partnerships and thus cannot be invoked as the basis for personal jurisdiction over the Partnership Defendants.  *See Skidmore Energy, Inc. v. KPMG, LLP*, 2004 WL 3019097, at *5 (N.D. Tex. Dec. 28, 2004); *Pinebrook Prop., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 499-500 (Tex. App.—Texarkana 2002, pet. denied).  In addition, the court agrees with Defendants that one person cannot be the alter ego of another person for purposes of imputing one individual's contacts with the forum to another individual who otherwise lacks those contacts. Otherwise stated, there can be no corporate fiction to disregard in connection with Plaintiffs' allegations that Mrs. Magliarditi is the alter ego of Mr. Magliarditi.  Accordingly, as to Mrs. Magliarditi and the Partnership Defendants, Plaintiffs have failed to establish a prima facie case for the exercise of personal jurisdiction under the alter-ego doctrine.[2]

---

[2] Further, Plaintiffs, in their response to Defendants' motion to dismiss, fail to respond to Defendants' argument that the alter-ego doctrine does not apply to partnerships and that an individual cannot be the alter ego of another individual, as there is no corporate fiction to be disregarded.  Accordingly, Plaintiffs have conceded these points.  *See Kellam v. Metrocare Servs.*, 2013 WL 12093753, at *3 (N.D.

**B.      Transfer to the District of Nevada under 28 U.S.C. §§ 1631 and 1404(a)**

The court in now confronted with the question of whether to dismiss Mrs. Magliarditi and the Partnership Defendants for lack of personal jurisdiction, as Defendants request, and force Plaintiffs to pursue the same case in two different courts, or to exercise its discretion, and transfer this action to the District of Nevada pursuant to 28 U.S.C. §§ 1631 and 1404(a), where Plaintiffs will be able to pursue their fraudulent transfer and alter-ego claims against all Defendants in one forum.  For the reasons that follow, the court concludes that a transfer is warranted.

> 1.  *Transfer of Plaintiffs' Suit Against Mrs. Magliarditi and the Partnership Defendants under 28 U.S.C. § 1631*

Once a district court determines it lacks personal jurisdiction over a defendant, it has the option of dismissing the action or transferring it to any district in which it could have been brought. *See* 28 U.S.C. § 1631.  Section 1631 provides, in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . . and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.

28 U.S.C. § 1631.

The court, thus, must first determine whether Plaintiffs' action could originally have been brought in the District of Nevada.  Defendants, all alleged to be residents of Nevada, concede that the District of Nevada "is a district in which this action might otherwise have been brought[,]" and that venue is proper in the District of Nevada.  *See* Magliarditi's Am. Rule 12 Mot. Dis. ¶15 (Doc. 14); Defs.' Rule 12 Mot. Dis. 11 (Doc. 19).  Plaintiffs do not argue that the action could not have

---

Tex. May 31, 2013) (Plaintiffs abandoned claims when they failed to respond to arguments made in a motion to dismiss.).

**Memorandum Opinion and Order - Page 13**

been brought there.  Further, all Defendants reside in Nevada and a substantial part of the alleged facts giving rise to the causes of action occurred in Nevada.  Therefore, the court concludes that this action could have been brought in the District of Nevada.  *See generally* 28 U.S.C. §1391(b).

Second, the court must ask whether transferring the action against Mrs. Magliarditi and the Partnership Defendants would be in the interest of justice.  The court concludes that transferring the case would avoid any prejudice to Plaintiffs of potential statute of limitations problems and would allow Plaintiffs to avoid the unnecessary expense associated with filing a new civil action.  Moreover, transfer will not cause any undue burden to Defendants Mrs. Magliarditi and the Partnership Defendants.  They do not argue that litigating this case in Nevada would impose an unwarranted hardship, nor could they, as the case would be tried in a state where they conduct business, reside, are subject to personal jurisdiction, and where the events alleged in the Complaint occurred.  Finally, transfer to the District of Nevada, where this action could have originally been brought, imposes no greater burden on that district, as Plaintiffs would have to refile their lawsuit in that district were the court to dismiss Mrs. Magliarditi and the Partnership Defendants for lack of personal jurisdiction.

One court in this judicial district has noted that "it is not clear that the court can transfer a case under § 1631 when the court lacks personal jurisdiction."  *See Orix Pub. Fin. v. Lake Cnty. Hous. & Redev. Auth.*, 2011 WL 3628958, at *8 (N.D. Tex. Aug. 16, 2011) (Fitzwater, J.) (citations omitted).  While the court recognizes that some federal courts limit § 1631 to transfers where the transferor court lacks subject matter jurisdiction, absent a decision by the Fifth Circuit to the contrary, the court, consistent with the weight of authority, agrees with those courts that interpret § 1631 according to its plain meaning to apply when a court lacks either personal or subject matter jurisdiction.  *See, e.g., Federal Home Loan Bank v. Moody's Corp.*, 821 F.3d 102, 119 (1st Cir.),

*cert. denied*, 137 S. Ct. 304 (2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553 (2017) (holding that § 1631 should be interpreted "broadly to permit transfer when there is a lack of either personal or subject matter jurisdiction"); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (concluding that "§ 1631 . . . applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction."); *Island Insteel Sys., Inc. v. Water,* 296 F.3d 200, 218 n.9 (3d Cir. 2002) (stating that a district court "ha[s] authority" under § 1631 to transfer an action over which it "lack[s] *in personam* jurisdiction."); *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1526-27 (10th Cir. 1987) (same); *see also Hill v. U.S. Air Force*, 795 F.2d 1067, 1068-70 (D.C. Cir. 1986) (considering whether a district court lacking personal jurisdiction over nonresident defendant abused its discretion by failing to transfer a cause under § 1631 to a district court with personal jurisdiction); *Johnson v. Woodcock*, 444 F.3d 953, 954 n.2 (8th Cir. 2006) ("[W]e affirm the district court's dismissal [for lack of personal jurisdiction] even though the court was empowered by 28 U.S.C. § 1631 to transfer the action to another court to cure lack of jurisdiction.").

This court is baffled by the authority that holds or suggests that 28 U.S.C. § 1631 pertains to subject matter jurisdiction but not personal jurisdiction.  The statute makes no such distinction.  It is clear on its face and allows a court to transfer a civil action to any other court in which the action or appeal could have been brought.  The statute does not place or include any limitation or restriction as to the type of jurisdiction.  It is unambiguous, that is, the statute is not capable of more than one reasonable interpretation.

Some courts have referred to the legislative history in holding that the statute applies only to subject matter jurisdiction; however, the legislative history is quite beside the point when there is no ambiguity in the statute.  As the Supreme Court aptly and succinctly stated, "[T] he

authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568 (2005).  Also, as the application of the plain meaning of § 1631 does not lead to an "absurd result," Congress's intent is of no moment and cannot be considered by a court in interpreting a statute.  *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (citations omitted).

Congress has been writing statutes for over three hundred years, and if it had intended for § 1631 to apply to subject matter jurisdiction only, its members certainly had the intellect and capacity to limit the statute's applicability to subject matter jurisdiction; however, it did not do so.  No court should engage in judicial overreaching to interpret and "write in" a limitation or exclusion that is repugnant to the statute's clearly stated text.

Further, if § 1631 only referred to subject matter jurisdiction, it would have minimal utility.  This is so because a district court lacking subject matter jurisdiction, in most instances, dismisses an action that was originally filed in federal court, and remands an action if it is one that was removed from state court to federal court.  This court has never transferred a case when it lacked subject matter jurisdiction, except those involving a successive or second habeas petition pursuant to 28 U.S.C. § 2244(b)(3)(A).  *See Henderson v. Haro*, 282 F.3d 862, 864 (5th Cir. 2002).

Finally, dismissal of a case, as opposed to transfer, will require a plaintiff to incur new filing fees and other costs, and a dismissal could raise issues regarding limitations.  The court can think of no logical reason why a district court that lacks personal jurisdiction should not be allowed to transfer an action to another court, rather than dismiss it, under such circumstances.  A narrow

interpretation that § 1631 only applies to subject matter jurisdiction is plainly contrary to the text of the statute and does not promote judicial economy.

For all of these reasons, the court concludes that it has the authority, in the interest of justice, to transfer an action when it lacks personal jurisdiction and will transfer this action insofar as it relates to Mrs. Magliarditi and the Partnership Defendants to the United States District Court for the District of Nevada  pursuant to 28 U.S.C. § 1631.[3]

### 2.   *Transfer of Remainder of Case Pursuant to 28 U.S.C. § 1404(a)*

Prior to severing the action against Mrs. Magliarditi and the Partnership Defendants and transferring it to the District of Nevada under 28 U.S.C. §1631, the court must address whether the remainder of the case should be transferred to the District of Nevada under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought."  The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]"  *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 27 (1960)).  Though Defendants did not seek a transfer of venue, the court may nevertheless transfer venue *sua sponte.  See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) (holding that district court may *sua sponte* transfer action

---

[3]  In the alternative to transfer under 28 U.S.C. §1631, the court holds that, for the reasons set forth below (*see infra* Sec. III.B.2), transfer of Plaintiffs' action against Mrs. Magliarditi and the Partnership Defendants is proper under 28 U.S.C. § 1404(a).  *See Aguacate Consol. Mines v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978) (construing "the discretionary transfer language of §1404(a) to permit transfer for the convenience of the parties and in the interest of justice of cases with proper venue even if no personal jurisdiction existed in the transferring court.") (citation omitted).

pursuant to 28 USC § 1404(a)); *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989) ("Such transfers [under section 1404(a)] may be made *sua sponte*."); *Franklin v. GMAC Mortgage*, 2013 WL 2367791, at *1 (N.D. Tex. May 30, 2013) ("The Court may . . . issue a Section 1404(a) transfer order *sua sponte*.") (Fitzwater, J.).  When deciding whether to transfer venue, discretion must be exercised according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen,* 376 U.S. at 622.  A court has "broad discretion in deciding whether to order a transfer."   *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

   In determining whether to transfer the action, the court considers "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (internal quotations and citations omitted).  In applying section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003)). Once this initial determination is made, a district court:

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice."  The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight.  The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.* (citations omitted).  In a § 1404(a) analysis, a plaintiff's choice of forum "should be respected" unless "the transferee venue is clearly more convenient."  *Volkswagen II*, 545 F.3d at 315.  A plaintiff's choice of forum, however, is not an independent factor within the § 1404(a) analysis." *Id.* at 314 n.10.  "Although a plaintiff's initial choice of forum is entitled to deference, the degree of deference is higher when he has chosen his home forum.  Conversely, when a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum, a court gives less deference to a plaintiff's choice."  *Franklin*, 2013 WL 23677791, at *2 (quoting *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 690-91 (S.D. Tex. 2010)).

Thus, the court first considers whether venue is proper in the District of Nevada.  For the reasons already discussed, Defendants have conceded, and the court has found, that venue is proper in the District of Nevada.  Accordingly, this action is eligible to be transferred to the District of Nevada at the court's discretion if, after considering the public and private interest factors, the court concludes that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Peteet*, 868 F.2d at 1436.

In this case, while some of the § 1404(a) factors are neutral as between this court and the District of Nevada, those factors that favor the District of Nevada, on balance, strongly favor transfer to the District of Nevada, and no factor actually favors maintaining this case in the Northern District of Texas.  First, Plaintiffs have failed to allege any facts suggesting that any, much less a substantial part, of the events giving rise to their fraudulent transfer claims occurred in Texas, or that any of the property allegedly transferred is situated in Texas.  While the Judgment was entered in the 2006 Action in the Northern District of Texas, a judgment is not a *res*, and is

entitled to full faith and credit in all states once properly filed in a state by the judgment creditor. *See* U.S. Const. art IV, § 1.

Second, Plaintiff TransFirst is a Delaware corporation with its principal place of business in Hauppauge, New York. As already noted, a plaintiff's choice of forum is entitled to less deference when the chosen forum is not his home forum, as in this case. *See Rimkus Consulting*, 693 F. Supp. 2d at 690-91. Additionally, for a company with its principal place of business in New York, it is no less convenient for Plaintiffs to litigate this action in the District of Nevada than it would be to litigate in this judicial district. Insofar as Plaintiffs' counsel who are located in Dallas, Texas, the court notes that the convenience of counsel is improper and irrelevant in considering whether to transfer venue under § 1404(a). *Volkswagen I*, 371 F.3d at 206.

Third, as all Defendants reside in Nevada, and the acts and omissions giving rise to Plaintiffs' fraudulent transfer claims occurred in Nevada, the court concludes that it would likely be more convenient for witnesses if the action were transferred to the District of Nevada and access to sources of proof would likely be more readily available in the District of Nevada.

Finally, the court finds that transfer to the District of Nevada is in the interest of justice, as it will allow Plaintiffs to pursue their claims against all Defendants in a single forum, thereby avoiding the potential risks of inconsistent judgments, piecemeal litigation in separate judicial districts, and the inefficiencies and burdens inherent in having nearly identical and overlapping actions proceeding in two separate judicial district courts.

Accordingly, for the convenience of the parties and in the interest of justice, the court will transfer this action as it relates to Defendants Mr. Magliarditi, the Trust Defendants, and the Shell Company Defendants to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a).

## IV.      Conclusion

For the reasons herein stated, the court finds that it lacks personal jurisdiction over Francine Magliarditi, as sued in her individual capacity, DFM Holdings, Ltd., and DFM Holdings, LP. Rather than dismiss Francine Magliarditi, DFM Holdings, Ltd., and DFM Holdings, LP for lack of personal jurisdiction, the court hereby **transfers** this action insofar as it relates to these Defendants to the District Court for the District of Nevada pursuant to 28 U.S.C. § 1631.  The court **transfers** this action as it relates to Defendants Mr. Magliarditi, the Trust Defendants, and the Shell Company Defendants to the District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a).  In light of the court's ruling, the court need not address the remaining grounds for dismissal set forth in Defendants' respective motions to dismiss (*see* Docs. 14, 18), and the motions are hereby **denied without prejudice**.  The clerk of the court shall effect this transfer in accordance with the usual procedure.

**It is so ordered** this 15th day of February, 2017.

Sam A. Lindsay
United States District Judge